**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

ARCARE, d/b/a PARKIN DRUG, on behalf                                    PLAINTIFF
of itself and all others similarly situated

v.                                    No. 2:16CV00080 JLH

IMS HEALTH, INC.                                                        DEFENDANT

**OPINION AND ORDER**

ARcare brings this action on behalf of itself and others similarly situated for damages and injunctive relief under the Telephone Consumer Protection Act of 1991 ("TCPA"). 47 U.S.C. § 227(b)(3). With three exceptions, the TCPA prohibits any person from using a telephone facsimile machine to send an unsolicited advertisement. ARcare alleges that IMS Health, Inc. sent at least six unsolicited advertisements to ARcare's ink-and-paper facsimile machine. IMS Health has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that the faxes it sent to ARcare, which are attached to the complaint, are not "advertisements." If the faxes are not "advertisements," within the meaning of the TCPA, then the complaint fails to state a claim upon which relief can be granted. The faxes are not "advertisements," as the law has defined the term for purposes of the TCPA. Therefore, for the following reasons, the motion to dismiss is granted.

**I.**

The complaint alleges that ARcare is a non-profit corporation, which owns the Parkin Drug Store and the Bald Knob Medical Clinic. IMS Health is a Connecticut corporation that provides global information and technology services that help improve performance and protect patient privacy. IMS Health owns Healthcare Data Solutions.

IMS Health sent an unsolicited fax to ARcare on May 11, 2015. Document #1 at 11. The fax features the Healthcare Data Solutions logo and states in part:

> Healthcare Data Solutions (HDS) works with pharmacies and prescribers to ensure the confidential exchange and confirmation of patient information. We want to verify that your fax number is compliant and secure to protect patient's information and allow pharmacies to verify prescriber information regarding prescription refill requests. Thank you for your time.

*Id.* The fax then asks the recipient to verify the practice's address, phone number, fax number, office manager, and website; the identity of the medial professional who provides services at the practice; and the direct fax number for that medical professional. *Id.* The fax provides a space for a signature, where the recipient can affirm that the information provided is true and correct. *Id.* The fax also provides a box, where the recipient can check if he has additional information or would rather receive a phone call from a Healthcare Data Solutions representative. *Id.* ARcare attached five other faxes to the complaint. The faxes were sent on March 21, April 19, April 20, May 13, and June 15, 2015, and vary only by the practice and the professional. Document #1 at 13-17.

**II.**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The Court accepts as true all of the factual allegations contained in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must contain

more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. Moreover, the Court may consider the faxes attached to the complaint. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003).

### III.

IMS Health maintains that the faxes it sent to ARcare and other entities are not "advertisements" as that term is defined by applicable law because they do not promote goods or services that are for sale to the fax recipients; rather, they seek to verify the recipients' contact information. Document #11 at 5. ARcare, on the other hand, maintains that the faxes are advertisements because they promote IMS Health's pharmacy compliance services. Document #15 at 1. ARcare explains: "Defendant's faxes do not seek merely to verify [ARcare's] contact information. Rather, they are sent to generate business and maximize [IMS Health's] profit motive. Ostensibly, the faxes offer a free service: An evaluation of Plaintiff's fax number to ensure it complies with the various regulatory standards." *Id*. (citing 21 F.C.C.R. 3787, 3814 (2006)).

The TCPA, as amended by the Junk Fax Prevention Act of 2005, makes it unlawful for any person to use a telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, except under limited circumstances that are not relevant to IMS Health's motion to dismiss. 47 U.S.C. § 227(b)(1). "The term 'unsolicited advertisement'[1] means any material advertising the commercial availability or quality of any

---

[1] The Sixth Circuit addressed the question of law presented to this Court–whether a certain fax is an "advertisement"–for the first time in *Sandusky Wellness Ctr. v. Medco Health Solutions*, 788 F.3d 218, 221 (6th Cir. 2015). The court clarified the statutory definition: "We can glean a few things from [the statutory] definition. For one thing, we know the fax must *advertise* something. Advertising is '[t]he action of drawing the public's attention to something to promote its sale.

property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).  Congress gave the Federal Communications Commission authority to make regulations to implement the TCPA.  47 U.S.C. § 227(b)(2).  These regulations explain what constitutes an "advertisement" by illustrating the types of faxes that violate the statute.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C.R. 3787, 3810-15 (2006).  For example, "facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition."[2]  *Id*. at 3814.

In *Ameriguard, Inc. v. Univ. of Kansas Med. Ctr.*, the court held that a fax seeking participants in a clinical research trial for "prevention of diabetes" was not an "advertisement" and dismissed the action for failure to state a claim.  No. 06-0369-CV-W-ODS, 2006 WL 1766812 at *1 (W.D. Mo. June 23, 2006) (*aff'd Ameriguard, Inc. v. Univ. of Kansas Med. Ctr.*, 222 Fed. Appx. 530, 531 (8th Cir. 2007)).  The fax discussed general information about diabetes; announced the clinical research trial; provided that qualified participants would receive study-related medical care,

---

Black's Law Dictionary 65 (10th ed. 2014) . . . . So material that advertises something promotes it to the public as *for sale*.  For another thing, we know that what's advertised–here, the 'availability or qualify of any property, goods, or services'–must be *commercial* in nature.  Commercial means 'of, in, or relating to commerce'; 'from the point of view of profit: having profit as the primary aim.' Webster's Third at 456 . . . . So to be an ad, the fax must promote goods or services to be bought or sole, and it should have profit as an aim."  *Id*. at 220-21.

[2] There is a circuit split as to the level of *Chevron* deference courts must afford the FCC's regulations implementing the TCPA.  *See Sandusky*, 788 F.3d at 223.  Courts disagree as to whether the statutory definition of "unsolicited advertisement" is ambiguous.  *Id*.  ARcare uses the FCC regulations to bolster its argument.  Neither party raises the issue of deference and the regulations do not support a finding that the Healthcare Data Solutions faxes are advertisements.  Therefore, the Court need not decide the level of deference warranted.

study medication, and counseling at no cost; provided that travel would be compensated; and provided a section for the recipient to provide contact information. *Id*. The plaintiff argued that inviting people to obtain information about diabetes prevention qualified as "commercial availability" of the defendant's goods. *Id*. at *2. The court disagreed: "First, the Complaint does not allege Defendant makes 'information about diabetes prevention' commercially available (as opposed to simply delivering it to people), nor does it allege Defendant sells medication directly to the public. Second, there is no suggestion that defendant included the call for volunteers as a smokescreen to mask a true purpose of engaging in the commercial activity of providing or selling medicine." *Compare id.*, *and Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 686 (7th Cir. 2013) (holding that fax devoting 75 percent of its space to mundane advice and the remainder to a lawyer's logo, name, address, and specialties was an advertisement);[3] *Physicians Healthsource, Inc. v. Express Scripts Serv. Co.*, No. 4:15-CV-664 JAR, 2016 WL 1246884 at *2 (E.D. Mo. March 30, 2016) (holding that a fax describing the availability of the defendant's goods and services was an advertisement).

Accepting the complaint's allegations as true and drawing all inferences in ARcare's favor, the Court concludes that the faxes in dispute are non-commercial messages that fall outside that

---

[3] In *Holtzman*, the Seventh Circuit based its holding in part on the fact that the "plug for Turza's services was not incidental to a message that would have been sent anyway; promotion or marketing was the reason the faxes were transmitted." 728 F.3d at 688. Turza's own lawyer called the faxes "promotional device[s]" during oral argument. *Id*. at 687. Likewise, in *Paldo Sign*, another case on which ARcare relies, the sender of the fax acknowledged that its purpose was to direct traffic to a database of industrial real estate listings owned and managed by the sender. *Paldo Sign and Display Co. v. Wagener Equities, Inc.*, 67 F. Supp. 3d 874, 881 (N.D. Ill. 2014). Here, IMS Health has not identified promotion of its services as the fax's purpose and ARcare has failed to allege facts upon which the Court can reasonably infer the fax was intended to promote the commercial availability of IMS Health's services.

TCPA's ban on unsolicited advertisements. Here, the fax is not a direct commercial solicitation and like in *Ameriguard*, the plaintiff–ARcare–has failed to allege facts from which the Court reasonably could infer that the fax it received was either an indirect commercial solicitation or a pretext for a commercial solicitation. ARcare argues that considering the different components of fax together–the prominence of the logo, address, and phone number, the description of Healthcare Data Solutions, and the offer to verify the fax number and practice information–the fax "inform[s] the recipient that Defendant's pharmacy compliance services are commercially available." Document #15 at 5. But ARcare does not allege, nor does the fax indicate where or how this category of services is available for purchase by the fax recipient. *See, e.g.*, *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, No. 12-2132 (FLW), 2013 WL 486207 at *4 (D. N.J. Feb. 6, 2013) ("[T]he inquiry under the TCPA is whether the content of the message is commercial, not what predictions can be made about future economic benefits."). ARcare only broadly alleges that "Defendant IMS Health Inc. is a Connecticut entity that features global information and technology services that help improve performance and protect patient privacy."[4] Document #1 at 2, ¶10. And the fax contains one sentence vaguely describing Healthcare Data Solutions. Document #1 at 11. What, if any, services are *commercially* available to ARcare is unclear.

---

[4] In ARcare's response in opposition to IMS Health's motion to dismiss, ARcare asks the Court to look to IMS Health's website as corroboration for its assertion that IMS Health intends to use its faxes to generate market awareness and sales for its pharmacy compliance services. Document #15 at 6-7. But in deciding this motion to dismiss, the Court is limited to the complaint and materials necessarily embraced by the pleadings, such as the faxes ARcare attached to its complaint. The cases ARcare cites in support of its suggestion involve motions for summary judgment, materials the plaintiff attached to his complaint, or a court's decision not to look outside the fax and the complaint but reconsider the issue at the summary judgment stage. *See* Document #15 at 6.

It is true that "a fax that does not on its face promote a product or service may nonetheless violate the TCPA if it is a precursor for a future solicitation." *Drug Reform Coordination Net v. Grey House Pub.* 106 F. Supp. 3d 9, 13 (D.D.C. 2013) (holding that a fax that was not an unsolicited advertisement on its face was nonetheless an advertisement because three direct solicitation e-mails followed).  But ARcare does not allege that IMS Health wanted to verify that the recipients' fax numbers as a prelude to later solicitations to purchase its services.  *See Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 13 (D.D.C. 2015) ("Standing alone, the Fax does not promote the Directory for sale.  Rather, it apprised Plaintiff of the Directory's upcoming edition and offered the opportunity to update Plaintiff's 'free listing' so that its contact information would be accurate . . . . But a different conclusion obtains when the Fax is read together with the three direct solicitation e-mails that followed", which offered the Directory for sale for $289).  *Phillips Randolph v. Adler-Weiner Research Chicago*, 526 F. Supp. 2d 851 (N.D. Ill. 2007).

ARcare does not even speculate in its complaint that the fax was part of IMS Health's operations to market its services, or that the fax would be followed by a commercial solicitation for the recipient to purchase services from IMS Health.  *See Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, No. 3:14-cv-405 (SRU), 2015 WL 144728 at *5 (D. Conn. Jan. 12, 2015).  And nothing in the fax itself suggests that verifying the recipient's fax number and information about the practice was a pretext for pitching a particular service. *Ameriguard*, 2006 WL 1766812 at *2.  "The fact that the sender might gain an ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, information communication into a commercial solicitation." *Sandusky*, 788 F.3d at 225.  The message–please verify your contact information and let Healthcare Data Solutions know if you have additional information or would rather speak with

a representative–does not tend to propose a commercial transaction. Therefore, the complaint fails to state a claim for relief under the TCPA.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED. Document #10. This action is dismissed without prejudice.

IT IS SO ORDERED this 15th day of September, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE